UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Nancy K.[1], | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL NO. 4:20cv2 ) |
| ANDREW M. SAUL,<br>Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) as provided for in the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

2

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2016.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 30, 2012 through her date last insured of June 30, 2016 (20 CFR 404,1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: arthritis of the shoulder, arthritis of the knee, hip bursitis, obesity, cervical degenerative disc disease and lumbar degenerative disc disease (20 CFR 404.1520(c)).

4. Through the date insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant could occasionally reach overhead with both upper extremities, and frequently reach in all other directions with other upper extremities.  She could occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel and crouch.  She could never climb ladders, ropes, or scaffolds, never crawl, never work at unprotected heights, never work around dangerous machinery with moving mechanical parts, and never operate a motor vehicle as part of her work-related duties.  Every 60 minutes, the claimant needed to be allowed to shift positions, or alternate between sitting and standing for one to two minutes at a time while remaining on tasks.

6. Through the date last insured, the claimant was capable of performing past relevant work as a Retail Store Manager and Purchasing Agent.  This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 30, 2012, the alleged onset date, through June 30, 2016, the date last insured. (20 CFR CFR 404.1520(f)).

(Tr. 12-21).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits.

The ALJ's decision became the final agency decision when the Appeals Council denied review.

3

This appeal followed.

Plaintiff filed her opening brief on June 15, 2020. On July 23, 2020 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on August 25, 2020. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded for an award of benefits.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 4 was the determinative inquiry.

The record shows that Plaintiff had arthritis of the shoulder, arthritis of the knees, hip bursitis, obesity, cervical degenerative disc disease, carpal tunnel syndrome, lumbar degenerative disc disease, and psychological impairments. (AR 12.)

Plaintiff underwent a consultative evaluation with Luella Bangura, M.D. in October 2012.

(AR 332-36.) Plaintiff complained of difficulty gripping items, trouble turning her head from side to side, and was only comfortable when lying down; she had trouble sitting, standing, and walking for long periods of time. (AR 333.) She also had bilateral arm and hand numbness. (AR 333.) She experienced depression and needed to occasionally isolate herself from others; she had crying spells as well. (AR 333.) She had cervical fusion surgery in August 2012 and had had seven injections in that year; she further wore a neck and back brace. (AR 333.) Upon examination Plaintiff had some difficulty turning her neck and could walk on heels and toes with difficulty; she had tenderness to the cervical and lumbosacral spine. (AR 335-36.) Plaintiff further had reduced cervical, lumbar, and bilateral shoulder range of motion, and was limited to 100 degrees shoulder abduction bilaterally. (AR 337.)

Plaintiff underwent a consultative psychological evaluation with Ryan Oetting, Ph.D, HSPP in October 2012. (AR 338-40.) Plaintiff presented with a lot of body movement related to restlessness and anxiety and she had an anxious, sometimes tearful, affect and reported a fluctuating mood. (AR 338.) She reported needing assistance with washing dishes due to neck/back pain and further felt depressed daily with low motivation and worthlessness. (AR 339.) She worried excessively and felt restless. (AR 339.) Dr. Oetting opined that Plaintiff appeared to suffer from some chronic clinical symptoms of anxiety and had the cognitive and communication ability to handle various unskilled and semi-skilled labor tasks. (AR 339-40.)

At the initial level, non-examining State agency reviewing doctors Amy S. Johnson, Ph.D. and M. Brill, M.D. opined in June 2016 that Plaintiff had severe degenerative disc disease and non-severe anxiety disorders with insufficient evidence existing to establish her "B" criteria mental limitations. (AR 72-76.) Dr. Brill opined that Plaintiff could lift 20 pounds occasionally and 10

5

pounds frequently and could sit, stand, and walk for six hours out of the workday with occasional postural limitations. (AR 74-75.) Dr. Brill further opined that Plaintiff was limited to frequent right overhead reaching. (AR 75.) At the reconsideration level, William A. Shipley, Ph.D. and J.V. Corcoran, M.D. affirmed these opinions in April 2017. (AR 85-89.)

In support of remand, Plaintiff argues that the ALJ did not adequately account for Plaintiff's mental limitations. The ALJ found that Plaintiff had mild limitations in understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace. (AR 13-14.) Despite stating that he factored these mild limitations into the RFC assessment, that assessment in fact omitted any discussion of them. (AR 15-20); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJs must assess the combined effect of a claimant's impairments, even those which are not severe). This Court has repeatedly addressed this issue and has held that an ALJ must address mild mental limitations in determining a claimant's residual functional capacity. *See John P. v. Saul*, 2019 WL 4072118 *4 (N.D. Ind. Aug. 28, 2019) citing *Winfield v. Commissioner of Social Sec.*, 2013 WL 692408 *3 (N.D. Ind. Feb. 25, 2013) (mild impairments can put greater strain on individuals suffering from other afflictions, and the failure to fully consider impact of non-severe impairments is reversible error); *Miller v. Commissioner of Social Security,* 2017 WL 1421271 *7-8 (N.D. Ind. Apr. 21, 2017) (remanding where the ALJ found that the claimant's mental impairments were not severe then omitted any discussion of those mental impairments in determining the claimant's RFC); *Verlee v. Colvin*, 2013 WL 6063243 *4 (N.D. Ind. Nov. 18, 2013) (failure to assess mild mental limitations in RFC was critical defect because even mild limitations can alter ultimate conclusion on disability with respect to skilled jobs).

Plaintiff contends that the ALJ's failure to include Plaintiff's mild mental limitations in the RFC assessment was improper as the evidence reflects ongoing psychological abnormalities strongly supporting those limitations. Specifically, Plaintiff admitted in August 2012 that her depression and stress had worsened and that she was increasingly tearful despite trying numerous psychiatric medications including Celexa, Ativan, Lexapro, Valium, Klonopin, Effexor, and Prozac; she was tearful upon examination in June, August, and September 2012. (AR 376, 387, 391-92, 394-97, 790, 854.) She further reported acute panic attacks. (AR 391.) In March 2013 she was tearful, anxious, and appeared distressed upon examination. (AR 442.) In May 2013 she was anxious, tearful, and difficult to calm upon examination. (AR 440.) June 2013 notes show that Plaintiff's anxiety and depression had worsened over the past year. (AR 437.) She was again jittery, tearful, and unable to focus and was anxious upon examination. (AR 437-38.)

In August 2013, Plaintiff underwent a psychiatric assessment with Christy R. McLaughlin, APN. (AR 673-77.) Plaintiff reiterated complaints of panic attacks and anxiety as well as trying numerous different medications; she was extremely nervous and tremulous during that session and was also tearful and very anxious. (AR 673.) Her mood and affect were anxious. (AR 675.) Ms. McLaughlin diagnosed panic disorder without agoraphobia, major depression, recurrent, and generalized anxiety disorder with OCD features. (AR 676.) A September 2013 examination showed an anxious mood/affect. (AR 672.) An October 2013 examination showed that she was slightly anxious and complained of panic attacks and being overwhelmed. (AR 671.) She was anxious and/or tearful upon examination in 2014; in May 2014 she reported getting irritable easily and experiencing panic attacks. (AR 429, 433, 435, 668-69, 746-47.) In January 2015 she exhibited a dysphoric mood upon examination. (AR 666.) In January 2016, Plaintiff complained of

being overwhelmed and worrying excessively as well as periods of depression with withdrawal, sadness, and a lack of motivation; upon examination she seemed somewhat sad and anxious and her thought content showed that she worried excessively. (AR 659-61.) In March 2016, Plaintiff exhibited a mildly anxious mood and was diagnosed with generalized anxiety disorder and major depression, recurrent; she was prescribed Zoloft and Xanax. (AR 655-58.) In June 2016, Plaintiff complained of anxiety and panic attacks when leaving her house; she described having to leave a store in the middle of shopping and further noted excessive worrying. (AR 836.) Examination in that month showed a moderately anxious mood. (AR 838.) She was additionally prescribed Buspar. (AR 839.) In August 2016, she again complained of anxiety despite Buspar; examination showed a depressed and moderately anxious mood as well as a worried thought content. (AR 840-42.) In March 2017, she complained of increasing anxiety and depression symptoms. (AR 926.) In November 2017, she complained of high anxiety; her mood was mildly to moderately anxious upon examination and she worried in her thought content. (AR 859-61.)

  Plaintiff points out that repeatedly abnormal mental status examinations over several years support her mental limitations and lend credence to her allegations of panic attacks with an associated need to isolate (AR 56-58) as well as difficulty concentrating. (AR 239, 266, 269.) Plaintiff maintains that the ALJ erred by failing to include those symptoms stemming from Plaintiff's mild mental limitations in the RFC assessment. *See* SSR 16-3p ("we will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions"); SSR 96-8p ("the RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical

8

and other evidence"); *Stage*, 812 F.3d at 1125; *Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (RFC assessments and hypothetical questions must include all limitations supported by the record); *Verlee*, 2013 WL 6063243 *4.

Plaintiff notes that the record contains a piece of opinion evidence which aligns with her alleged restrictions and the ALJ's own findings about her mild mental limitations. That is, consultative examiner Dr. Oetting opined that Plaintiff appeared to suffer from some chronic clinical symptoms of anxiety and had the cognitive and communication ability to handle various unskilled and semi-skilled labor tasks. (AR 339-40.) The ALJ afforded great weight to this opinion (AR 14) yet did not discuss the conflict between Dr. Oetting's opinion and the conclusion that Plaintiff was able to return to her past skilled jobs. (AR 14, 20-21); *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) ("rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled…can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step"); *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011).

Plaintiff agues that the ALJ's failure to include her mental limitations in the RFC without explanation was not harmless. Plaintiff points out that the vocational expert characterized Plaintiff's two past skilled jobs as SVP 7 jobs, while semi-skilled jobs—the highest skill level jobs Dr. Oetting opined Plaintiff could handle—correspond to SVP 3 and 4. SSR 00-4p (semi-skilled work corresponds to an SVP of 3-4, and skilled work corresponds to an SVP of 5-9); SSR 85-15 ("in the world of work, losses of intellectual and emotional capacities are generally more serious when the job is complex"); *Stage*, 812 F.3d at 1125; *Young*, 362 F.3d at 1003-05; *Cheryl C. v. Berryhill*, 2019 WL 339514 *3 (N.D. Ill. Jan. 28, 2019). Plaintiff argues that her mental

9

limitations, coupled with Dr. Oetting's opinion (which the ALJ gave great weight to), would have precluded the performance of her past skilled work and thus rendered Plaintiff disabled as of her 55th birthday, July 26, 2012, pursuant to the Medical-Vocational Guidelines[2]. (AR 41, 68); *See* 20 C.F.R. 404, Subpart P, Appendix 2, Rule 202.06.

Plaintiff, who is now 63 years old, requests that this Court remand for an award of benefits, as the ALJ gave great weight to a consultative examiner's opinion that Plaintiff was limited to no more than semi-skilled work. (AR 14.) That opinion conflicts with Plaintiff's ability to perform her past jobs, and as noted, the inability to perform those jobs results in a finding of disability from July 26, 2012 onwards. (AR 41, 64, 68); *See* 20 C.F.R. 404, Subpart P, Appendix 2, Rule 202.06. An award of benefits is appropriate where all factual issues have been resolved and the "record can yield but one supportable conclusion." *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993). Plaintiff maintains that the only supportable conclusion in this case, given that the ALJ afforded great weight to Dr. Oetting's opinion, is that Plaintiff could not perform her past relevant jobs as a retail store manager and purchasing agent due to her mental limitations. (AR 14, 21), and thus became disabled, as per the grids set forth in Appendix 2, as of her 55th birthday.

In response, the Commissioner argues that the ALJ considered all of Plaintiff's medically determinable impairments, including her mental impairments, when determining the RFC. However, the Commissioner cites to the ALJ's recitation of the evidence at Step 2, and does not point to a narrative discussion describing how the evidence supported each RFC conclusion.. SSR 96-8p; *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJs must assess the combined

---

[2] The VE testified that Plaintiff possessed no transferable skills at the light level, meaning that Plaintiff would not be able to adjust to other skilled or semi-skilled positions. (AR 64)

10

effect of a claimant's impairments, even non-severe ones). Although the ALJ stated he factored Plaintiff's mild mental limitations into the RFC assessment, a plain reading of that assessment shows that the ALJ omitted any discussion of them. (AR 15-20.) This Court has held that an ALJ must address mild mental limitations in determining a claimant's RFC. *Verlee v. Colvin*, 2013 WL 6063243 *4 (N.D. Ind. Nov. 18, 2013) (failure to assess mild mental limitations in RFC was critical defect because even mild limitations can alter ultimate conclusion on disability with respect to skilled jobs).

The Commissioner next asserts that while Plaintiff cites to abnormal mental status examinations, the record also contains normal mental status examinations. However, every piece of evidence in the record need not be abnormal to warrant including limitations in the RFC assessment. Plaintiff cited to numerous abnormal mental status examinations which supported her mental limitations, including panic attacks with an associated need to isolate as well as difficulty concentrating and focusing. (AR 56-58; 239, 266, 269, 376, 387, 391-92, 394-97, 429, 433, 435, 437-38, 440, 442, 659-61, 666-69, 672-73, 746-47, 790, 836-42, 854, 859-61); *Gerstner v. Berryhill*, 879 F.3d 257, 261-62 (7th Cir. 2018) (ALJ fixated on select "normal" examinations in the record and selectively discussed the evidence). The Commissioner also notes that Plaintiff cites some evidence from after her date last insured. However, post-DLI evidence is still relevant and an ALJ must consider it. *Bjornson v. Astrue*, 671 F.3d 640, 642 (7th Cir. 2012) (rejecting government's argument that ALJ could not consider evidence after the date last insured).

The Commissioner argues that Plaintiff does not specify what additional limitations are supported by the record, and that Plaintiff merely infers that her conditions imposed limitations. However, Plaintiff clearly identified functional restrictions stemming from her mental limitations,

11

including panic attacks resulting in a need to isolate. as well as difficulty concentrating and focusing. (AR 56-58; 239, 266, 269, 437-38); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (claimant produced evidence of her alleged limitation in the form of her testimony and medical evidence which the ALJ failed to account for in determining her RFC). These functional restrictions precluded Plaintiff's ability to perform her past skilled work as a retail store manager and purchasing agent because those jobs require a significant amount of multitasking, interpersonal skills, and precise recordkeeping. *See* "Manager, Retail Store," Dictionary of Occupational Titles ("DOT") Job Number 185.167-046, 1991 WL 671299; "Purchasing Agent," DOT Job Number 162.157-038, 1991 WL 647293.

Clearly, Plaintiff's isolation and concentration difficulties would interfere with her ability to carry out the demanding tasks of her past jobs on a sustained basis. SSR 85-15 ("in the world of work, losses of intellectual and emotional capacities are generally more serious when the job is complex"). As noted above, were Plaintiff unable to perform those jobs, she would be rendered disabled as of her 55th birthday, July 26, 2012 pursuant to the Medical-Vocational Guidelines. (AR 41, 68); *See* 20 C.F.R. 404, Subpart P, Appendix 2, Rule 202.06. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

The Commissioner argues that consultative examiner Dr. Oetting's opinion did not indicate that Plaintiff was incapable of skilled work as it only commented on Plaintiff's ability to perform unskilled and semi-skilled tasks. However, Dr. Oetting's opinion, in the section of his report entitled "Current Level of Functioning," clearly states that Plaintiff possessed the cognitive and communication ability to handle unskilled and semi-skilled labor tasks. (AR 339-40.) Obviously, had Dr. Oetting felt that Plaintiff could perform skilled tasks, he would have said so in

12

this section. He did not, and he opined that Plaintiff was capable of semi-skilled tasks at most. The record thus supports only one conclusion – that Plaintiff was unable to perform her past skilled jobs and has no transferable skills. This, in turn, requires a finding of disability as of her 55th birthday. 20 C.F.R. 404, Subpart P, Appendix 2, Rule 202.06.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED FOR AN AWARD OF BENEFITS, in accordance with the above Opinion.

Entered: September 2, 2020.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court